UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
COURCHEVEL 1850 LLC,  :
        Plaintiff,  :
    :
v.  : **OPINION AND ORDER**
    :
MIGUEL ESPINOSA a/k/a MIGUEL  : 17 CV 799 (VB)
ESPINOZA, PERLA ESPINOSA, and  :
FREEWAY GROUP INC.,  :
        Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Courchevel 1850 LLC ("Courchevel") filed this action against defendants Miguel Espinosa a/k/a/ Miguel Espinoza, Perla Espinosa, and Freeway Group Inc. ("Freeway"), under New York Real Property Actions and Proceedings Law ("RPAPL") § 1301 et seq., to foreclose on a mortgage encumbering property commonly known as 4 Lafayette Avenue, New Rochelle, New York 10801 (the "Property").

Now pending is Freeway's motion to vacate the default judgment of foreclosure and sale entered against it by the Court on September 6, 2017. (Doc. #17).

For the following reasons, Freeway's motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

I.    Factual Background

Freeway manages the Property's three residential rental units.

Mingjing Lu, Freeway's president and sole shareholder, avers Freeway purchased the Property from defendants Miguel and Perla Espinosa in a short sale on May 10, 2013. (Doc. #21: Lu Aff. ¶ 7 & Ex. J).

1

Lu states the Espinosas' mortgage loan servicer, Ocwen Loan Servicing ("Ocwen"), agreed to accept $227,973.08[1] in full satisfaction of the Espinosas' first mortgage, and $17,170.73 in full satisfaction of the Espinosas' second mortgage. (Lu Aff. ¶ 7). In accordance with the agreement with Ocwen, Freeway paid off the mortgages on the Property on May 10, 2013, including the $172,750 mortgage made by the Espinosas to Impac Funding Corporation ("Impac") that is the subject of Courchevel's complaint in this action. (Compare Lu Aff. ¶¶ 9−10 & Ex. L at 9, with Doc. #12: Weinrib Aff. ¶ 1).

According to Lu, the mortgage note was endorsed multiple times after the mortgage was paid, first from Mortgage Electronic Registration Systems, Inc., as nominee of Impac, to Trinity Financial Services, LLC, then to RCS Recovery Services, LLC, and finally to Courchevel. (Lu Aff. ¶ 11).

Despite the endorsements, Lu submits numerous documents to support her claim that Freeway paid off the mortgages on the Property, including: (i) a May 9, 2013, letter from Ocwen confirming acceptance of Freeway's short sale terms, comprising net proceeds of no less than $277,973.08 (Lu Aff. Ex. K at 1); (ii) a May 9, 2013, letter from Clay Small, of the accounts receivable firm Caine & Weber, confirming its client Impac would "release its interest" in the Property for $17,170.73 (id. at 4); (iii) an outgoing wire transfer request dated May 10, 2013, for payment of $277,978.08 from Freeway to Ocwen (Lu Aff. Ex. M at 1−2); (iv) an outgoing wire transfer request dated May 10, 2013, for payment of $17,170.73 from Freeway to Caine & Weber (id. at 3−4); and (v) a May 10, 2013, email from Mr. Small of Caine & Weber stating, "We have been able to confirm the receipt of the funds in our account." (Id. at 6).

---

[1] The Court assumes the references in Lu's affidavit to $227,973.08 are a typographical error, in view of documents submitted as attachment to Lu's affidavit indicating that the loan service provider agreed to accept net proceeds of no less than $277,973.08, and Freeway paid $277,978.08.

2

II.     Procedural Background

Courchevel commenced this action on February 2, 2017.

Thereafter, Courchevel filed an affidavit of service indicating it served Freeway with the summons and complaint on February 21, 2017, by personally delivering two copies of each document to the office of the New York Secretary of State, pursuant to New York Business Corporation Law § 306.  (Doc. #9).

Following service, there was no substantive action in the case until June 28, 2017, when the Clerk entered a certificate of default, noting the defendants' default pursuant to Rule 55(a). (Doc. #10).

On July 12, 2017, Courchevel moved by order to show cause for a default judgment of foreclosure and sale.  (Doc. #11).  Courchevel filed an affidavit of service indicating it served Freeway with a copy of the order to show cause on July 12, 2017, by first class mail addressed to the Secretary of State.  (Doc. #12-6).  After a hearing on September 6, 2017, the Court entered a judgment of foreclosure and sale.  (Doc. #13).

A judicial sale was held on December 20, 2017, and Courchevel was the successful bidder.  (Doc. #27-1: Sarway Aff. ¶ 8).

On January 10, 2018, Courchevel and non-party 4 Lafayette Realty LLC ("4 Lafayette") entered into an Agreement to Assign and Purchase Successful Foreclosure Sale Bid, pursuant to which 4 Lafayette agreed to purchase Couchevel's successful bid for $320,000.  (Sarway Aff. ¶ 9).

On February 5, 2018, the appointed referee executed the Referee's Report of Sale and delivered the deed conveying title to 4 Lafayette.  (Sarway Aff. ¶ 11).

However, on February 20, 2018, Freeway appeared in the action and moved by order to show cause to vacate the default judgment and nullify the deed conveying the Property to 4 Lafayette. In an affidavit in support of the order to show cause, Lu asserts Freeway was not served with the summons and complaint, or with the order to show cause for a default judgment of foreclosure and sale. (Lu Aff. ¶¶ 2, 6).

With regard to the summons and complaint, Lu submits a February 23, 2018, letter from the New York Department of State stating that it received process from Courchevel and sent it by certified mail to Freeway at its registered address (Freeway Group, Inc., 450 Beach Ave., Mamaroneck, NY 10543). (Doc. #30: Gould Aff. Ex. A). However, the envelope containing process was returned unopened to the Secretary of State with the notation "Attempted Unknown/Not Known." (Id.).

With regard to the order to show cause for default judgment of foreclosure and sale, Lu submits a March 26, 2018, letter from the New York Department of State stating it has "no record of personal service" on Freeway. (Gould Aff. Ex. B). In addition, the letter states the Department of State "returns all papers with a correspondence letter to the sender because the Department of State is not authorized to accept or forward mail on behalf of a corporation or other business entity." (Id.)

Lu avers Freeway first learned of this action on February 5, 2018, after judgment was entered. Lu states that Morris Sar, a representative of 4 Lafayette, gave her a copy of a Memo of Sale indicating Courchevel purchased the Property for $1,000 on December 20, 2017 (Lu Aff. ¶ 2 & Ex. C), and the deed conveying the Property to 4 Lafayette. (Lu Aff. ¶ 2 & Ex. B).

Upon receipt of Freeway's order to show cause, the Court held a hearing on February 20, 2018, which was attended by counsel for Freeway and 4 Lafayette. At the hearing, the Court

4

issued a temporary restraining order pursuant to Rule 65(b), restraining 4 Lafayette from "(a) enforcing the Judgment; (b) recording the Referee's Deed . . . ; and (c) entering upon and/or taking possession or control, managing or interfering with the management or ownership of the premises at 4 Lafayette Avenue, New Rochelle, NY by Freeway Group Inc." (Doc. #17). It was further ordered that "all rent and income from the Premises be disbursed by Freeway Group Inc. only to pay for expenses related to the Premises (real estate taxes, utilities, insurance)." (Id.) In addition, Freeway was ordered to "account to 4 Lafayette Realty LLC on a monthly basis for all income and expenses." (Id.)

Following the hearing, Freeway received a Satisfaction of Mortgage from Impac. The satisfaction indicates the mortgage "has not been further assigned of record." (Gould Aff. Ex. C at 3). On March 9, 2018, Freeway recorded the satisfaction in the Westchester County Clerk's Office. (Gould Aff. ¶ 11 & Ex. C).

Adan Roesner, a representative of Impac, affirms that the mortgage that is the subject of Courchevel's complaint was "paid off in full on or about May 9, 2013," but the "lender inadvertently neglected to prepare and file a discharge of the Mortgage or such has been lost." (Gould Aff. Ex. D: Roesner Aff. ¶¶ 3−4).

## DISCUSSION

I.    <u>Legal Standard for Vacatur of Default Judgment</u>

Rule 55(c) of the Federal Rules of Civil Procedure provides in relevant part that a district court "may set aside a final default judgment under Rule 60(b)."

Under Rule 60(b), a district court may, on a motion:

> relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier

5

judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166–67 (2d Cir. 2004) (quoting SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)).

"A motion to vacate a default judgment is 'addressed to the sound discretion of the district court.'" New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (quoting State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d at 166).

In the Second Circuit there is "a strong 'preference for resolving disputes on the merits.'" New York v. Green, 420 F.3d at 104 (quoting Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)). This is particularly important in this context, because "a default judgment is 'the most severe sanction which the court may apply.'" Id. (quoting Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995)). "Accordingly, in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." Id. (citation omitted).

II.  Freeway's Default

Freeway argues the Court should vacate the default judgment because it did not act willfully, it has demonstrated it has a meritorious defense, and vacating the default judgment would not prejudice Courchevel or 4 Lafayette.

6

Although vacating the default will prejudice 4 Lafayette, the Court agrees.

A. Willfulness

Willfulness requires "'something more than mere negligence,' such as 'egregious or deliberate conduct,' although 'the degree of negligence in precipitating a default is a relevant factor to be considered.'" New York v. Green, 420 F.3d at 108 (quoting Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 60, 61 (2d Cir. 1996)).

Freeway's default was not willful. Freeway asserts it did not have actual notice of the suit until after the default judgment was entered, and submits evidence that it did not receive process served on the Secretary of State. (See Lu Aff. ¶ 2; Gould Aff. Exs. A & B). In addition, upon learning of the action on February 5, 2018, Freeway moved to vacate the judgment. Freeway's prompt response after receiving notice "make[s] clear that [it] is not willing to forfeit [its] rights." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993).

Freeway cannot explain why process properly served on the Secretary of State and sent to Freeway at its address was returned as undeliverable. According to Courchevel, after the show cause hearing on February 20, 2018, Freeway updated its address with the Secretary of State. Courchevel argues Freeway's failure to maintain an updated address with the Secretary of State mitigates against vacating the default.

However, it is undisputed that Freeway did not receive the summons and complaint. In addition, there is nothing in the record to suggest Freeway knew Courchevel had a claim against it, and deliberately failed to update its address. As such, although Freeway's failure may have been careless, or even negligent, it was clearly not willful. Cf. Swift Spinning Mills v. B&H Apparel, 2003 WL 942610, at *1 (S.D.N.Y. Mar. 6, 2003) (finding default willful due to defendant's failure to update its address because, in part, the defendant was "well aware of the

7

issues with plaintiff, and that plaintiff could possibly move to sue," but still made "no effort to notify anyone" of its change of address), aff'd sub nom. Swift Spinning Mills, Inc. v. B&H Apparel Corp., 96 F. App'x 761 (2d Cir. 2004) (summary order).

      B      Meritorious Defense

Moreover, Freeway has a meritorious defense.

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively . . . but he must present evidence of facts that, if proven at trial, would constitute a complete defense." S.E.C. v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998) (internal citation and quotations omitted).

Here, Freeway contends the mortgage loan at issue was paid in full on May 10, 2013. Freeway has submitted evidence to support that assertion, including email communications with the agent of the loan service provider accepting Freeway's offer of payment, and confirming receipt of payment, in addition to wire transfer requests in the amount of the outstanding amounts due on the Property's mortgages. Based on this evidence, a trier of fact could conclude Freeway did in fact pay off the mortgage at issue.

Thus, for purposes of this motion, Freeway has sufficiently demonstrated it has a complete and meritorious defense.

      C.      Prejudice

Plaintiff and 4 Lafayette argue 4 Lafayette will be prejudiced in the event of vacatur.

The Court agrees; however, any prejudice to 4 Lafayette is vastly outweighed by the prejudice to Freeway if it is deprived of the opportunity to defend itself. According to Lu, Freeway paid $330,000 for the Property, and has invested thousands of additional dollars since

2013, in addition to the time spent managing the Property over the course of five years. (Lu Aff. ¶ 12).

In contrast, 4 Lafayette asserts it made a $32,000 deposit on the Property, and gave two mortgages to Wisdom Equities, LLC, on which it has begun making monthly payments. (Doc. #27-1: Sarway Aff. ¶¶ 10, 19). 4 Lafayette asserts it would lose its interest in the premises, and be exposed to liability to its mortgage lender if the default judgment is vacated.

However, the "requisite level of prejudice" requires a showing of prejudice that "cannot be rectified in the Court in another manner were the default to be vacated." Glob. Gold Mining, LLC v. Ayvazian, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013), aff'd in rel. part, modified in part sub nom. Glob. Gold Min., LLC v. Ayvazian, 612 F. App'x 11 (2d Cir. 2015) (summary order).

Here, vacatur of the default will not prevent 4 Lafayette from seeking relief in court. 4 Lafayette may seek damages against Courchevel, or otherwise pursue its legal remedies to recover its purchase price and expenses. Indeed, it appears that pursuant to 4 Lafayette's contract with Courchevel, if the referee's deed is found to be defective, 4 Lafayette may be able to receive a "return of those sums actually paid on account of the purchase price." (Sarway Aff. Ex. F: Terms of Sale ¶ 10). Although 4 Lafayette asserts the Property is unique, that fact, if true, prejudices Freeway equally, and therefore also weighs in favor of resolving this dispute on the merits.

Moreover, the large sums of money at stake for all parties plainly weighs in favor of vacating the default judgment, not against it. See Horn v. Intelectron Corp., 294 F. Supp. 1153, 1155 (S.D.N.Y. 1968) ("Matters which involve large sums of money should not be determined by default judgments if it can reasonably be avoided.").

In view of the foregoing, vacatur of the default judgment is appropriate.

III. The Referee's Deed

Courchevel and 4 Lafayette argue the referee's deed conveying the Property to 4 Lafayette should not be nullified because 4 Lafayette is a bona fide purchaser for value.

The Court disagrees.

Pursuant to New York Real Property Law § 266, the title of a bona fide purchaser for value is protected unless the purchaser had previous notice of "the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." The status of a bona fide purchaser for value "cannot be maintained by a purchaser with either notice or knowledge of a prior interest or equity in the property, or one with knowledge of facts that would lead a reasonably prudent purchaser to make inquiries concerning such." UD 1635, LLC v. Winkler, 156 A.D.3d 742, 743 (2d Dep't 2017). It is 4 Lafayette's burden to establish that it is entitled to bona fide purchaser for value status. See T & V Constr., Inc. v. Calapai, 90 A.D.3d 908, 908−09 (2d Dep't 2011).

Here, the title search conducted by Old Republic National Title Insurance Company reflects a mortgage made by Miguel and Perla Espinosa in 2006 (Sarway Aff. Ex. I at 13), but the tax search indicates Freeway, not the Espinosas, was the Property's assessed owner, and that county and school taxes were timely paid in 2017. (Id. at 15). In addition, it is undisputed that there were tenants in the Property's residential units, and the deed was conveyed subject to "[l]eases, tenancies and occupants of the Premises." (Sarway Aff. Ex. D: Agreement to Assign and Purchase Successful Foreclosure Sale Bid ¶ 12(a)).

A reasonable purchaser, confronted with these various potential interests in the Property, would certainly investigate the matter further. See, e.g., Mortg. Elec. Registration Sys., Inc. v. Pagan, 119 A.D.3d 749, 753 (2d Dep't 2014) ("Having failed to inquire of [the resident] as to her

interest in the property, Deutsche Bank is guilty of a degree of negligence fatal to its claim that it is a bona fide purchaser") (internal quotation omitted); Vitale v. Pinto, 118 A.D.2d 774, 776 (2d Dep't 1986) (mortgagee who was aware of tenant in possession had duty to inquire into tenant's interest in the property). There is no evidence 4 Lafayette conducted any such investigation.

Had 4 Lafayette inquired into the nature of the tenants' possession of the Property, it likely would have learned the tenants paid monthly rent to Freeway, and where such rent was sent or how it was collected. 4 Lafayette could then have inquired of Freeway regarding the nature of its interest in the Property, and likely would have learned Freeway owned and managed the Property, and was unaware of the default judgment against it. In short, there are issues of fact as to whether 4 Lafayette knew of facts that would lead a reasonably prudent purchaser to make inquiries.

Therefore, 4 Lafayette is not entitled to bona fide purchaser for value status, and it is appropriate to nullify the referee's deed.

## CONCLUSION

Freeway's motion to vacate the default judgment and nullify the referee's deed is GRANTED.

By July 31, 2018, Freeway shall answer, move, or otherwise respond to the complaint.

The Clerk is instructed to (i) vacate the default judgment entered on September 6, 2017 (Doc. #13), and (ii) reopen this case.

Dated: July 17, 2018
     White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

11