UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
COURCHEVEL 1850 LLC,                          :
                Plaintiff,             :
                                       :
v.                                            :    **OPINION AND ORDER**
                                       :
MIGUEL ESPINOSA a/k/a MIGUEL                  :    17 CV 799 (VB)
ESPINOZA, PERLA ESPINOSA, and                 :
FREEWAY GROUP INC.,                           :
                Defendants,            :
                                       :
and                                           :
                                       :
4 LAFAYETTE REALTY LLC and                    :
WISDOM EQUITIES LLC,                          :
                Defendant-Intervenors. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Courchevel 1850 LLC brought this action against defendants Miguel Espinosa a/k/a/ Miguel Espinoza, Perla Espinosa (together, the "Espinosas"), and Freeway Group Inc. ("Freeway Group"), to foreclose on a mortgage encumbering real property commonly known as 4 Lafayette Avenue, New Rochelle, New York 10801 (the "property").

      Now pending is defendant-intervenors 4 Lafayette Realty LLC ("4 Lafayette") and Wisdom Equities LLC's ("Wisdom Equities") motion for partial summary judgment on three of five counterclaims asserted against plaintiff: (i) rescission for failure of consideration; (ii) breach of contract; and (iii) unjust enrichment. (Doc. #86).

      For the following reasons, the motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

1

**BACKGROUND**

Defendant-intervenors and plaintiff have submitted memoranda of law, statements of material facts pursuant to Local Rule 56.1, declarations, affidavits, and supporting exhibits. Together, they reflect the following uncontested background.

I. <u>Factual Background</u>

On May 26, 2006, the Espinosas executed a New York Balloon Note (the "note"), in which they promised to pay Impac Funding Corporation d/b/a Impac Lending Group ("Impac") the principal amount of $172,750. As security for the note, the Espinosas executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Impac, a Mortgage (the "mortgage") encumbering the property. On August 31, 2006, the mortgage was duly recorded in the Westchester County Clerk's Office.

At unidentified times, Impac transferred the note to Trinity Financial Services, LLC, which, in turn, transferred the note to RCS Recovery Services, LLC, which, in turn, transferred the note to Milky Way II LLC. On January 18, 2017, Milky Way II LLC transferred the note to plaintiff.

On February 2, 2017, plaintiff commenced the instant action by filing a complaint in this Court to foreclose upon a purported interest in the mortgage.[1] Plaintiff named as defendants the Espinosas, as mortgagors, and Freeway Group, the then-owner of record of the property by virtue of a deed from the Espinosas, dated May 10, 2013, and recorded in the County Clerk's Office on May 23, 2013.

---

[1] On its face, the note allonge executed by Milky Way II LLC appears also to assign to plaintiff the mortgage. However, no recorded assignment of the mortgage—which was made to MERS, as nominee for Impac—has been produced.

2

Defendants failed to answer, move, or otherwise respond to the complaint, and the Clerk of Court entered defendants' default on June 28, 2017. On July 12, 2017, plaintiff moved by order to show cause for a default judgment.

On September 6, 2017, the Court granted plaintiff's motion and issued a Judgment of Foreclosure and Sale (the "judgment").

On December 20, 2017, a judicial sale of the property was conducted. Plaintiff was the successful bidder at the sale.

On January 10, 2018, plaintiff and 4 Lafayette executed an agreement styled "Agreement to Assign and Purchase Successful Foreclosure Sale Bid" (the "assignment of bid"). Pursuant to the assignment of bid, plaintiff agreed to sell and assign to 4 Lafayette its right to acquire the property. The agreed-upon contract price was $320,000. On January 10, 2018, 4 Lafayette paid plaintiff an initial deposit of $32,000.

On February 5, 2018, the foreclosure referee prepared a Referee's Report of Sale and a Referee's Deed (the "referee's deed").

On February 14, 2018, at the closing attendant to the transaction, 4 Lafayette paid plaintiff $286,777.93 in full performance of 4 Lafayette's obligations of the assignment of bid.[2] The referee's deed was dated and delivered to 4 Lafayette, and the sale closed.

Wisdom Equities loaned to 4 Lafayette the majority of funds for the assignment of bid. As security for the loan, on the date of the closing, 4 Lafayette executed and delivered to Wisdom Equities two mortgages encumbering the property—one for $256,000 and the other for $50,000.

---

[2] The remaining $1,222.07 of the purchase price was reflected as a credit to 4 Lafayette to account for outstanding city and school taxes.

On February 20, 2018, after it learned of the sale of the property from plaintiff to 4 Lafayette, Freeway Group appeared in the action and moved by order to show cause to vacate the foreclosure judgment. Freeway Group contended it purchased the property from the Espinosas in a short sale on May 10, 2013, and, as part of that transaction, remitted to Ocwen Loan Servicing—Impac's loan servicer at the time—payment to satisfy the mortgage in full. 4 Lafayette opposed the motion to vacate, asserting it was a bona fide purchaser for value and that its interest in the property was protected from any claims of right, title, or interest asserted by Freeway Group.

In support of Freeway Group's motion to vacate, a representative of Impac submitted an affidavit, dated March 7, 2018, stating the mortgage was "paid off in full on or about May 9, 2013 as part of a 'short sale' of the premises secured by the Mortgage." (See Doc. #30-4). Impac did not, however, record in the County Clerk's Office a satisfaction of mortgage when Freeway Group purchased the property. The Impac representative admitted as such, affirming Impac "inadvertently neglected to prepare and file a discharge of the Mortgage or such has been lost." (Id.).

On March 7, 2018, Impac executed a Satisfaction of Mortgage, certifying the mortgage had been paid, and discharging same. The satisfaction further indicates the mortgage "has not been FURTHER assigned of record." (Doc. #88 ("Sandolo Decl.") Ex. 16 ("Satisfaction") at 1) (capitalization in original). Freeway Group recorded the satisfaction in the County Clerk's Office on March 9, 2018.

By Opinion and Order dated July 18, 2018, the Court granted Freeway Group's motion to vacate the judgment—principally because Freeway Group was never properly served with the summons and complaint, did not willfully default, and clearly had a meritorious defense. The Court thus unwound 4 Lafayette's acquisition of the property and nullified the referee's deed.

4

Further, the Court noted "vacatur of the default will not prevent 4 Lafayette from seeking relief in court. 4 Lafayette may seek damages against [plaintiff], or otherwise pursue its legal remedies to recover its purchase price and expenses." (Doc. #37 at 9).

On August 27, 2018, 4 Lafayette moved under Rule 60(b) for a modification of the July 18 Opinion and Order. Specifically, 4 Lafayette argued the Court inadvertently omitted to direct plaintiff to reimburse or make restitution to 4 Lafayette. On October 10, 2018, the Court denied 4 Lafayette's motion by Memorandum Opinion and Order, because "the Court believed it was not appropriate to award such relief in connection with the only motion then pending before it, namely Freeway Group's motion to vacate the default judgment of foreclosure and sale." (Doc. #56 at 2).

Prior to the Court's October 10 Memorandum Opinion and Order, by Order dated September 25, 2018, the Court granted 4 Lafayette and Wisdom Equities leave to intervene as party defendants. On October 10, 2018, defendant-intervenors filed an answer asserting counterclaims for fraudulent inducement, rescission for failure of consideration, breaches of contract and the covenant of good faith and fair dealing, and unjust enrichment.

On April 11, 2019, the parties participated in the Court-annexed mediation program. By joint letter dated April 22, 2019, the parties informed the Court that plaintiff and Freeway Group had "reached a settlement" and plaintiff "agreed to dismiss its foreclosure claim against Freeway and the non-appearing Defendants with prejudice." (Doc. #83). However, defendant-intervenors' counterclaims against plaintiff were not resolved at mediation.

Defendant-intervenors thereafter filed the instant motion for partial summary judgment.

**DISCUSSION**

I.    <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[3]

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of

---

[3]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

6

evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.  Rescission Claim

Defendant-intervenors argue they are entitled to summary judgment on their claim for rescission because plaintiff's assignment of bid fails for lack of consideration. Plaintiff responds that there was no mistake, unilateral or mutual, which induced defendant-intervenors to execute the assignment of bid and, as such, the claim for rescission fails. Plaintiff further contends defendant-intervenors waived their right to pursue rescission because they affirmed the assignment of bid by opposing Freeway Group's motion to vacate the judgment.

The Court rejects plaintiff's arguments and agrees with defendant-intervenors.

"The equitable remedy of rescission is to be invoked only when there is lacking complete and adequate remedy at law and where the status quo may be substantially restored." We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.), 221 F. Supp. 3d 396, 413 (S.D.N.Y. 2016). "[R]escission is an extraordinary remedy, appropriate only where the breach is found to

7

be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 143 (2d Cir. 2000).

"[T]o justify the remedy of rescission, a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." New Paradigm Software Corp. v. New Era of Networks, Inc., 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000).

"[F]ailure of consideration exists wherever one who has promised to give some performance fails without his or her fault to receive in some material respect the agreed quid pro quo for that performance. Failure of consideration gives the disappointed party the right to rescind the contract." Indep. Energy Corp. v. Trigen Energy Corp., 944 F. Supp. 1184, 1199 (S.D.N.Y. 1996). Where a party to an agreement "receives little or nothing of value," rescission "based upon failure of consideration is warranted." Id.

Here, the assignment of bid fails for lack of consideration. 4 Lafayette executed the assignment of bid "to purchase the . . . bid and to acquire title to the" property. (Sandolo Decl. Ex. 17, Ex. A ("Assignment of Bid") at 1) (emphasis added). On January 10, 2018, 4 Lafayette paid plaintiff the $32,000 deposit, and on February 14, 2018, remitted the balance of the $320,000 purchase price. What 4 Lafayette received in return was a worthless referee's deed granted pursuant to a foreclosure sale that should never have occurred.

Freeway Group satisfied the mortgage in 2013 when it acquired the property from the Espinosas. It purchased the property in a short sale, pursuant to which Impac agreed to discharge the mortgage upon payment from Freeway Group. Indeed, record evidence demonstrates Impac accepted $17,170.73 from Freeway Group to discharge the mortgage, and that such payment was remitted on May 10, 2013.

8

Moreover, the delay in recording the satisfaction of mortgage does not alter the fact that, as of May 2013, the mortgage was discharged pursuant to Freeway Group's short sale acquisition and mortgage payoff. In other words, once Impac accepted payment to discharge the mortgage, the property was no longer encumbered as collateral securing the note.

Further, the recorded satisfaction executed by Impac states in pertinent part that the mortgage "has not been further assigned of record." (Satisfaction at 1). For this reason, as well as those above, when plaintiff obtained possession of the note on January 18, 2017, it did not also obtain a mortgage interest or right to foreclose upon the property.

Plaintiff's argument that defendant-intervenors waived their right to pursue rescission because they affirmed the assignment of bid when they opposed Freeway Group's motion to vacate rings hollow. That 4 Lafayette opposed Freeway Group's motion to vacate and argued it was a bona fide purchaser for value in no way precludes defendant-intervenors from seeking rescission at this time. Indeed, the Court concluded 4 Lafayette could not have been a bona fide purchaser for value because plaintiff never had superior title to the property to assign. In other words, 4 Lafayette is not precluded from arguing rescission merely because it <u>thought</u> it was a bona fide purchaser for value.[4]

As an additional matter, plaintiff's argument wrongly supposes one party may affirm an agreement that cannot, as a matter of fact, be performed by the counterparty. As noted above, plaintiff agreed to sell 4 Lafayette the right to obtain title to the property. Yet plaintiff never held a superior interest to the property, and thus had no right to a foreclosure judgment, because

---

[4] With the benefit of hindsight, it would have facilitated the "just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, had 4 Lafayette not opposed Freeway Group's motion to vacate, and instead joined in the motion. But none of that changes the inescapable fact that 4 Lafayette was not a bona fide purchaser for value.

9

the mortgage was paid off in 2013. As a result, plaintiff simply cannot provide 4 Lafayette the consideration the assignment of bid requires—valid title.

Further unconvincing is plaintiff's position that rescission is improper because defendant-intervenors have not demonstrated a mutual or unilateral mistake respecting the execution of the assignment of bid. This argument overlooks additional circumstances—for example, "failure of consideration" or "an inability to perform the contract after it is made"—which may entitle a party to rescind an agreement. See, e.g., New Paradigm Software Corp. v. New Era of Networks, Inc., 107 F. Supp. 2d at 326.

For the above reasons, plaintiff cannot provide its agreed-upon consideration, and thus cannot satisfy its obligation under the assignment of bid. Plaintiff accepted $320,000 from 4 Lafayette but it did not and cannot perform its end of the bargain. Accordingly, as a matter of law, defendant-intervenors are entitled to summary judgment on their claim for rescission of the assignment of bid.

III.     Breach of Contract Claim

Defendant-intervenors argue they are entitled to summary judgment on their counterclaim for breach of contract, which seeks to recover the $32,000 contract deposit.

The Court agrees.

To establish a breach of contract under New York law, a party must demonstrate: (i) the existence of an agreement; (ii) performance by the moving party; (iii) breach of contract by the opposing party; and (iv) damages. Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004); see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 750 N.Y.2d 565, 569 (2002) (collecting cases). The

language of an unambiguous agreement is "definite and precise . . . , unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978).

"[F]or a breach of contract to be material, it must go to the root of the agreement between the parties," thereby making such breach "so substantial that it defeats the object of the parties in making the contract." Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 289 (2d Cir. 1997).

"In an action on a contract . . . summary judgment is perforce improper unless the terms of the agreement are wholly unambiguous and no material facts are in dispute." Leberman v. John Blair & Co., 880 F.2d 1555, 1559 (2d Cir. 1989).

Here, assuming the parties have an enforceable agreement, defendant-intervenors are entitled to reimbursement of the $32,000 assignment of bid initial deposit.

The assignment of bid states in pertinent part:

> 11. Defaults and Remedies. . . . (b) If the Seller defaults hereunder, Purchaser shall be entitled to return of the Downpayment.

(Assignment of Bid ¶ 11). It further provides:

> 24. Inability to Convey Title. If Seller shall be unable to convey title in accordance with the terms of this agreement, or in the event any material representation of Seller shall be false, the sole remedy of Purchaser is to terminate this contract and the sole obligation of Seller shall be to refund Purchaser's down payment made hereunder, and upon making such refund this agreement shall wholly cease and terminate.

(Assignment of Bid ¶ 21).

As noted above, plaintiff cannot "convey title in accordance with the terms" of the assignment of bid. (Assignment of Bid ¶ 21). Such inability "defeats the object of the parties in making the contract." Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d

11

at 289.  Although plaintiff argues defendant-intervenors received adequate consideration because 4 Lafayette received a referee's deed on the closing date, the deed conveyed no title.  Indeed, it was nullified, as was plaintiff's default judgment of foreclosure and sale.

For the above reasons, defendant-intervenors are entitled to summary judgment on their breach of contract claim.

IV.     Unjust Enrichment Claim

Finally, defendant-intervenors argue they are entitled to summary judgment on their counterclaim for unjust enrichment, for the balance of the purchase price paid to plaintiff.

The Court agrees.

"The theory of unjust enrichment lies as a quasi-contract claim."  Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572 (2005).  "To prevail on a claim for unjust enrichment in New York, a [moving party] must establish (1) that the [opposing party] benefitted; (2) at the [moving party's] expense; and (3) that equity and good conscience require restitution."  Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006).

"Under New York law, recovery under the theory of unjust enrichment is available only in the absence of an enforceable agreement."  Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 934 (S.D.N.Y. 2013) (citing Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d at 586).

As noted above, defendant-intervenors are entitled to summary judgment on their rescission claim because the assignment of bid fails for lack of consideration.  Plaintiff admits receipt of the assignment of bid purchase price.  Essentially, plaintiff accepted payment in exchange for nothing of value.  In this instance, "equity and good conscience" undoubtedly require restitution, as plaintiff cannot provide 4 Lafayette title to the property—the primary objective of the assignment of bid.

In making this determination, the Court is guided by Bank One N.A. v. Osorio, 62 A.D.3d 735 (2d Dep't 2009), cited by defendant-intervenors but conspicuously overlooked by plaintiff. There, a plaintiff's default judgment of foreclosure and sale was vacated and the subsequent sale set aside based on plaintiff's failure to serve a necessary party. Id. at 736. The successful bidder at the sale sued plaintiff for return of its purchase money and reimbursement of costs and expenses. Id. The lower court awarded the bidder return of its purchase money and costs. Id. The Appellate Division affirmed, noting reimbursement was "properly awarded" under the circumstances. Id. So too here.

Accordingly, based on the undisputed record and as a matter of law, defendant-intervenors are entitled to summary judgment on their unjust enrichment claim.

## CONCLUSION

Defendant-intervenors' motion for partial summary judgment is GRANTED.

By February 18, 2020, defendant-intervenors shall submit a proposed judgment in accordance with Local Civil Rule 77.1. Since, by this Opinion and Order, defendant-intervenors appear to have obtained all the relief they sought in their various counterclaims, by February 18, 2020, defendant-intervenors shall advise the Court by letter how they wish to proceed, if at all, on their remaining claims (Counterclaim I— fraudulent inducement, and Counterclaim III—for breach of the covenant of good faith and fair dealing).

The Clerk is instructed to terminate the motion. (Doc. #86).

Dated: February 10, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge